IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

FLAGSTAR BANK, FSB                          *
260 Telegraph Road, Suite 100
Bloomfield Hills, Michigan 48302            *

          Plaintiff,                *       Civil Action No.:  L01CV2221

v.                                          *

HASKELL MORTGAGE, INC./AKA HMI              *
1501 Reisterstown Road, Suite 201
Baltimore, Maryland 21208                   *

    SERVE ON:  Haskell Feldman            *
           1501 Reisterstown Road
           Suite 201                      *
           Baltimore, Maryland 21208
                                          *
and
                                          *

HASKELL FELDMAN
1501 Reisterstown Road, Suite 201
Baltimore, Maryland 21208

and

LEWIS I. FELDMAN
3500 Englemeade Road
Pikesville, Maryland  21208

and

SOVEREIGN TITLE COMPANY, LLC
301 West Pennsylvania Avenue, 3rd Floor
Towson, Maryland 21204

    SERVE ON:  Elizabeth B. Brooks
           304 W. Pennsylvania Avenue
           Towson, Maryland 21204
           Resident Agent
and

ELIZABETH B. BROOKS
304 W. Pennsylvania Avenue
Towson, MD 21204

and

AURA J. COLON
821 207th Street
Pasadena, MD 21122

                    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### THIRD AMENDED COMPLAINT

Plaintiff Flagstar Bank, FSB ("Flagstar") brings this Third Amended Complaint ("Amended Complaint") against Defendants Haskell Mortgage, Inc./a.k.a. HMI ("Haskell Mortgage"), Haskell Feldman, Lewis Feldman, Sovereign Title Company, LLC ("Sovereign Title"), Elizabeth B. Brooks ("Brooks") and Aura J. Colon ("Colon") and for cause states:

### JURISDICTION AND VENUE

1.   The subject matter jurisdiction of this Court is properly invoked pursuant to the provisions of 28 U.S.C. § 1332.  Certain of the claims of Flagstar arise under state law and for those claims the jurisdiction of this Court is alternatively invoked pursuant to the doctrine of pendent or supplemental jurisdiction under 28 U.S.C. § 1367.

2.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

3.   This Court has personal jurisdiction over Haskell Mortgage, Haskell Feldman, Lewis Feldman, Sovereign Title, Brooks and Colon who are Maryland residents or are corporations organized under the laws of and transact business in the State of Maryland or are foreign corporations doing business in Maryland.

### PARTIES

4.   Plaintiff Flagstar is a federally chartered savings bank organized and existing under federal law.  Flagstar is engaged, *inter alia*, in the business of purchasing mortgage loans. It is a citizen of and is principally located in the State of Michigan.  Since 1997, Flagstar has purchased mortgage loans from Haskell Mortgage that were originated in the Baltimore, Maryland area and secured by residential real property located in the Baltimore, Maryland area.

5.   Defendant Haskell Mortgage is a corporation organized under the laws of Maryland and has its principal place of business in the State of Maryland.  It is engaged in the business of originating, making and selling, mortgage loans, and transacts business in the State of Maryland.

6.   Defendant Haskell Feldman is a Maryland resident and is President and Secretary of Haskell Mortgage.

7.   Defendant Lewis Feldman is a Maryland resident and is Vice President of Haskell Mortgage.  Lewis Feldman assisted in preparing, *inter alia*, loan applications on behalf of borrowers for at least five of the mortgage loan transactions originated and made by Haskell Mortgage and purchased by Flagstar.

8.   Defendant Sovereign Title is a title company and was the title company/closing agent on at least two of the loan transactions originated by Haskell Mortgage and purchased by Flagstar.  On each such transaction, Sovereign Title was responsible for preparation of the documents of conveyance, including deeds, leasehold assignments and deeds of trust; conducted settlements of the sale and financing transactions; and disbursed purchase money, including down payments and loan proceeds.

9.   Defendant Brooks is an employee of Sovereign Title who participated in the preparation and execution of the documents, conducted settlements, and acted as a disbursement

agent on at least one of the mortgage loan transactions originated by Haskell Mortgage and purchased by Flagstar.

10. Defendant Colon is an employee of Sovereign Title who participated in the preparation and execution of the documents, conducted settlements, and acted as a disbursement agent on at least one of the mortgage loan transactions originated by Haskell Mortgage and purchased by Flagstar.

## **GENERAL ALLEGATIONS**

11. On January 3, 1997, Flagstar as buyer, and Haskell Mortgage as seller, entered into a Wholesale Lending Mortgage Purchase Agreement ("Purchase Agreement"). Pursuant to the terms and conditions of the Purchase Agreement, Flagstar purchased, from time to time, residential mortgage loans originated and made by Haskell Mortgage.

12. Pursuant to the Purchase Agreement, Flagstar purchased various residential mortgage loans from Haskell Mortgage.  Among these were the seven mortgage loans at issue in the instant case, which were purchased from Haskell Mortgage during the time period of February 2000 through October 2000.  All of the mortgage loans are secured by residential real property located within Baltimore City, Maryland.

13. Each mortgage loan purchase made by Flagstar is subject to Haskell Mortgage's agreements concerning its business practices and fulfillment of certain conditions precedent, including, but not limited to, the warranties and representations made by Haskell Mortgage in the Purchase Agreement.

14. The agreements, covenants, representations and warranties that Haskell Mortgage made to Flagstar to induce Flagstar to purchase each of the seven mortgage loans include the following:

a.      Seller shall be the originator of all loans offered for purchase under the Agreement.  Seller shall obtain appraisal, credit and other documentation required by Flagstar for each Mortgage Loan for which an individual borrower has authorized Seller to provide financing.

b.      Each of the Mortgage Loans shall comply with all applicable federal, State and local laws and regulations including, without limitation, usury, Truth-in-Lending Act, Real Estate Settlement, Procedures Act, recording, Fair Credit Reporting Act, Equal Credit Opportunity Act, 1 [sic] Flood Disaster Protection Act, adjustable rate loan requirements relating to the Seller's Authority and right to originate and sell the Mortgage Loans.  The Seller shall maintain in its possession, available for inspection by Flagstar, the Office of Thrift Supervision and the Federal Deposit Insurance Corporation, and shall deliver to Flagstar, evidence of compliance with all such requirements.

c.      Seller understands Flagstar intends to sell the Mortgage Loans to investors in the secondary market.  Seller represents, covenants and warrants that in submitting Mortgage Loans to Flagstar it is in full compliance with all pertinent requirements and warranties of the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or such other investor as Flagstar may identify.

d.      Seller warrants all documents submitted by Seller for each Mortgage Loan are in every respect valid and genuine, being what they support to be and all information submitted in each Mortgage Loan document is true and accurate.

e.      Seller warrants to the best of its knowledge the mortgaged property is free from damages (including but not limited to any damage by fire, windstorm or other casualty) and in good condition.

f.      Seller represents, covenants and warrants that all Mortgage Loans shall be closed by a title agency or settlement attorney approved by Flagstar and that no officer, employee or agent of Seller shall close any Mortgage Loan.  Seller shall provide Flagstar with an original insured closing letter for all title agencies and settlement attorneys.

g. Seller warrants that each Mortgage Loan is not 15 days or more delinquent and there are no defaults in complying with the terms of any loan, and all taxes, government assessments, insurance premiums, water sewer and municipal charges relating to any Mortgage Loan which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid. Seller represents and warrants it has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the borrower, directly or indirectly, for the payment of any amount required by any Mortgage Loan.

15. Pursuant to Paragraph 7 of the Purchase Agreement, Haskell Mortgage also represented, covenanted and warranted that (1) each of the mortgages assigned to Flagstar pursuant to the Purchase Agreement was at the time of assignment a first lien on the property described in said mortgage; and (2) each mortgage was duly executed and properly recorded.

16. Pursuant to Paragraph 2N of the Purchase Agreement, Haskell Mortgage agreed that upon written request it shall immediately repurchase from Flagstar any closed loan:

1. That is not in compliance with the Seller's warranties contained herein, or if its employees, directors, officers, agents and independent contractors, (including without limitation, sellers or brokers of Seller) commit fraud in the solicitation, processing, review of making of a Mortgage Loan or if the individual borrower committed fraud in connection with the application for the loan or otherwise.

2. That Flagstar is required to repurchase from any third party investor for any reason involving the origination or closing of the Mortgage Loan.

3. The "repurchase" price shall be equal to the unpaid principal balance of the loan, including the accrued but unpaid interest due Flagstar on the date of repurchase, premiums paid for any loan advances owing, plus any other costs including reasonable attorneys fee's incurred by Flagstar with regards to the repurchase.

17. Haskell Mortgage is obligated to repurchase the loans due to, among other things: (1) submitting to Flagstar falsely inflated appraisals on the mortgaged property serving as security for the loans; (2) submitting to Flagstar loan packages with fictitious employment information, false W-2 Forms and false wage statements for the borrowers; and (3) failing to

confirm the source of down payments made by borrowers where such down payments were excessive in light of the borrowers' income and assets.

18. Haskell Mortgage's breach of its obligations under the Purchase Agreement was part of a scheme to fraudulently induce Flagstar to purchase residential mortgage loans at greatly inflated prices.

19. By letter dated March 26, 2001 from Flagstar and again by letter dated July 2, 2001 from Flagstar's counsel, Flagstar made demand on Haskell Mortgage pursuant to Paragraph 2N of the Purchase Agreement to repurchase certain loans.

## THE SCHEME

20. Haskell Feldman and Lewis Feldman are officers of Haskell Mortgage.  The Haskell Mortgage transactions that are the subject matter of this Complaint are similar to mortgage fraud schemes that have plagued the Baltimore area over the past several years.   The proliferation of such schemes has led at least one expert in real estate transactions to label Baltimore as a "hot spot for mortgage fraud."

21. Mortgage fraud schemes involve sellers, mortgage brokers and appraisers, among others.  The sellers, known as flippers, search for houses at bargain-basement prices.  As the flippers search for houses, they also troll for first-time home buyers or aspiring landlords ("borrowers").   Sometimes the flippers also act as the mortgage broker.   On at least one transaction at issue in this case, Lewis Feldman's companies, Super Highway Consulting and Haskell Mortgage, acted as the seller and mortgage broker, respectively.   Nevertheless, Haskell Mortgage, acting as the flipper or the broker, connected the borrowers with Flagstar.   Haskell Mortgage prepared a package of documents that typically involved submissions to Flagstar of loan packages that included false documentation designed to make the deal legitimate and the

borrowers creditworthy.  These records inflated the borrowers' down payment, income and assets.

22. An appraisal is a key element in a real estate sale because Flagstar will not provide a mortgage to finance the deal unless an appraiser had valued the house at or above the purchase price.  Haskell Mortgage led Flagstar to believe that it contacted appraisers to appraise the property in an amount that would cover a loan to value ratio of between 60% and 90% of the purchase price.  However, unbeknownst to Flagstar, the loan to value ratios were well in excess of 100% of the actual property values.

23. Haskell Mortgage fraudulently induced Flagstar to purchase mortgage loans that exceeded the value of the underlying property.  Haskell Mortgage used falsified documents and false information to obtain mortgage loans for the buyers.  For two of the borrowers, Haskell Mortgage supplied the borrowers with fictitious employment information, false Certification of Employment forms, false W-2 Forms and false wage statements so that the borrowers appeared to qualify for the mortgages.

24. Haskell Mortgage also submitted to Flagstar mortgage loan packages which included false or inaccurate information regarding the borrowers' purported down payments at closing, where such down payments were in excess of what the borrowers' income and assets revealed he or she could pay.

25. Haskell Mortgage contacted appraisers to prepare inflated appraisals so the properties could be sold for more than the properties were worth, and hence, secure mortgages for more than the value of the house.

26. As a result, of Haskell Mortgage's scheme, Flagstar purchased loans in amounts that were often over 100% of the fair market value of the mortgaged property involved,

while Haskell Mortgage, sellers and appraisers, among others, walked away with their fees and profits intact.  Essentially, the scheme was to steal money from Flagstar.

## GRANT LOAN TRANSACTION
**Haskell Mortgage, Haskell Feldman and Lewis Feldman**

27. On February 11, 2000, Haskell Mortgage made one residential mortgage loan to borrower, Eura Grant ("Grant").  Lewis Feldman served as the loan officer for the loan and assisted in completion of the loan application via a face-to-face interview with Grant.  Flagstar purchased the loan from Haskell Mortgage.

28. The loan made to Grant was in the amount of $41,400.00 (Loan No. 998049955) to purchase property located at 2020 Eagle Street, Baltimore, Maryland 21223 ("Eagle Street").  The loan application indicates that Grant, a registered nurse, had a monthly salary of $2,504.40 from Johns Hopkins Bayview Medical Center, a monthly salary of $2,400.00 from Creative Energy, and a bank account balance of $10,127.00.

29. Haskell Mortgage misrepresented Grant's employment by providing fictitious employment information, false W-2 Forms and false wage statements to Flagstar.  The loan application for Eagle Street indicates that Grant was employed on a part-time basis as a bookkeeper with Creative Energy.  This job was used in qualification for the loan.  Haskell Mortgage provided Flagstar with W-2 Forms from Creative Energy for Grant stating a monthly gross income of $2,400.00.

30. However, Grant was never employed by Creative Energy and the documents regarding Grant were not accurate.  Moreover, after examination of Grant's bank statements, there are no deposits in Grant's bank account reflecting employment at Creative Energy.

31. Haskell Mortgage submitted to Flagstar a mortgage loan package which included false or inaccurate information regarding Grant's purported cash at settlement, where

such payment was in excess of what Grant's income and assets revealed she could pay. The HUD-1 Settlement Statement required cash at settlement from Grant of over $13,000.00 and her bank account statement indicated a balance of $10,127.00.

32. Upon information and belief, Haskell Mortgage contacted Best Appraisals to appraise the Eagle Street property.

33. The Eagle Street property was appraised by Best Appraisals for $46,000.00. Based on the appraisal provided by Best Appraisals, the loan to value ratio was 90%. The loan was purchased by Flagstar in reliance upon the appraisal and the borrower's ability to make the required down payment.

34. After Flagstar purchased the loan and became aware of irregularities associated with the Haskell Mortgage loans, Flagstar had a second appraisal prepared by a different appraiser which appraised the property in the amount of $20,000, representing a more accurate loan to value ratio of 207%.

35. Upon information and belief, Lewis Feldman contacted Darnell Acree of Smallwood investments to arrange the "flip" transaction. Indeed, a prior transaction involving Eagle Street occurred on the same day as the Grant transaction, thus preventing discovery of the flip. For the first transaction, Smallwood Investments paid $19,000.00 to Arnold and Sheila Hyatt for the property. In turn, Smallwood Investments sold the property to Grant on the same day for $46,000.00. Upon information and belief, the prior sale and the Grant sale were recorded on the same day as arms length transactions allegedly representing the fair market value of the property.

## DOVE LOAN TRANSACTIONS
### Haskell Mortgage, Haskell Feldman, Lewis Feldman, Sovereign Title, Elizabeth Brooks and Aura Colon

36. On May 5, 2000, Haskell Mortgage made two residential mortgage loans to borrower, Keith Dove ("Dove").  Keith Dove's girlfriend introduced Dove to Scott Dunton, as well as Lewis Feldman.  Lewis Feldman served as the loan officer for both loans and assisted in completion of both loan applications and loan document packages via face-to-face interviews with Dove.  Flagstar purchased both loans from Haskell Mortgage.

37. Dove's loan applications were different for the two loans even though both were prepared by Lewis Feldman.  Further, Dove's signatures on the loan application forms for the two loans are inconsistent and may be forged.

38. The first loan made to Dove was in the amount of $78,800.00 (Loan No. 998087470) to purchase property located at 719 S. Conkling Street, Baltimore, Maryland 21224 ("Conkling Street").  The loan application indicates that Dove had a monthly salary of $7,196.67, net rental income of $30.00 and bank account balances of $60,000.00.  The loan application also listed 3905 Fait Avenue as an investment rental property.  However, the Fait Avenue property was a pending purchase for that very same day.

39. The second loan made to Dove was in the amount of $83,000.00 (Loan No. 998087467) to purchase property located at 3905 Fait Avenue, Baltimore, Maryland 21224 ("Fait Avenue").  The loan application indicates that Dove had a monthly salary of $7,190.67, net rental income of $24.00 and bank account balances of $60,000.00.  The loan application also listed 719 S. Conkling Street as an investment rental property.  However, the Conkling Street property was a pending purchase for that very same day.

40. Haskell Mortgage misrepresented to Flagstar Dove's employment and provided Flagstar with fictitious employment information, false Certifications of Employment and false W-2 Forms and wage statements.  The loan applications for Conkling Street and Fait

Avenue indicate that Dove was employed as a sales representative for the past ten years at Creative Energy in College Park, Maryland.  This job was used in qualification for both loans. Haskell Mortgage provided Flagstar with W-2 Forms and paystubs from Creative Energy for Dove stating an annual income of $78,000.00 and $81,164.00 for 1998 and 1999 respectively. Haskell Mortgage also provided Flagstar with a Processor's Certification of Employment that purported to verify Dove was employed by Creative Energy.

41. However, Dove was never employed by Creative Energy and that the W-2 Forms and paystubs were not generated by Creative Energy.

42. Moreover, the income that Dove reported to the Internal Revenue Service for 1998 and 1999 was $23,160.00 and $23,079.00 respectively, not $78,800.00 and $81,164.00 as represented to Flagstar by Haskell Mortgage.

43. Haskell Mortgage submitted to Flagstar a mortgage loan package which included false or inaccurate information regarding Dove's purported cash at settlement, where such payment was in excess of what Dove's income and assets revealed he could pay.  Haskell Mortgage misrepresented to Flagstar that Dove had sufficient funds to close on both loans and that Dove used the same assets for both loans.  Shortly before closing on the loan, Dove provided bank statements with a balance of $40,050.51.  However, according to the HUD-1 Settlement Statements for Conkling Street and Fait Avenue, these two loan transactions required cash at settlement from Dove totaling over $63,000.00.  Dove never brought any funds to settlement and he was supposed to receive $10,000.00 from Haskell Mortgage after settlement.

44. The settlement statements indicate payoffs to Lewis Feldman's company, SCI. The payoffs to SCI are pursuant to unidentifiable invoice numbers of $40,064.51 and $58,800.00 for Conkling Street and Fait Avenue, respectively.   However, copies of checks from the

settlement company indicate that SCI received $41,775.00 and $59,075.00 for Conkling Street and Fait Avenue, respectively.

45. Upon information and belief, Haskell Mortgage contacted Burton Stevenson to appraise the Conkling Street and Fait Avenue properties.

46. The Conkling Street property was appraised by Stevenson for $98,500.00. Based upon the appraisal provided by Stevenson, the loan to value ratio was exactly 80% for Conkling Street. The Fait Avenue property was appraised by Stevenson for $103,800.00. Based upon the appraisal provided by Stevenson, the loan to value ratio was 80% for Fait Avenue. The loans were purchased by Flagstar in reliance upon the appraisals and the borrower's ability to make the required down payments.

47. After Flagstar purchased the loan and became aware of irregularities associated with the Haskell Mortgage loans, Flagstar had a second appraisal prepared by a different appraiser which appraised the Conkling Street property in the amount of $58,000, representing a more accurate loan to value ratio of 136%. The second appraisal of the Fait Avenue property reflected a value of $45,000, representing a loan to value ratio of 184%.

48. Sovereign Title knew that the loan was being assigned from Haskell Mortgage to Flagstar as evidenced on the Assignment of Deed of trust. Colon and Brooks failed to properly document events relating to the transaction on Sovereign Title's escrow disbursement statements, including but not limited to accepting cash from someone other than the borrower, thus violating the closing instructions. Brooks and Colon also failed to accurately reflect all receipts and disbursements indicated in the closing instructions.

### MOSES LOAN TRANSACTION
**Haskell Mortgage, Haskell Feldman and Lewis Feldman**

49. On October 17, 2000, Haskell Mortgage made one residential mortgage loan to borrower Cheryl Moses ("Moses").   The loan made to Moses was in the amount of $100,300.00 (Loan No. 998155032) to purchase property located at 2817 Florida Avenue, Halethorpe, Maryland 21227 ("Florida Avenue").   Flagstar purchased the loan from Haskell Mortgage.   In this case Lewis Feldman's companies, Super Highway Consulting and Haskell Mortgage, acted as the seller and mortgage broker, respectively.

50. Scott Smith, an employee of Haskell Mortgage, was the loan officer and completed the loan application via a face-to-face interview.   Upon information and belief, Scott Smith does not exist and was a name used by Lewis Feldman.   The loan application indicates that Moses had a monthly salary of $3,872..72 and a bank account balance of $22,210.00.

51. Haskell Mortgage misrepresented Moses' assets and debts to Flagstar. According to the loan application Moses rented 57 Bates Street, N.W., Apartment 5, Washington, D.C. ("Bates Street").   However, Moses purchased the Bates Street property on October 11, 2000, six days before the Florida Avenue property closed which carried a mortgage of $137,512.00.

52. The HUD-1 Settlement Statement for Florida Avenue required cash at settlement from Moses of over $33,000.00.   However, upon information and belief, Moses applied all of the funds in her bank account to the Bates Street purchase.   Accordingly, Haskell Mortgage submitted to Flagstar a mortgage loan package which included false or inaccurate information regarding Moses' purported cash at settlement payment, where such cash at settlement payment was in excess of what Moses' income and assets revealed she could pay.

53. Haskell Mortgage misrepresented to Flagstar Moses' employment.   The loan application indicated that Moses was employed for the last six years at RRS Services &

Consultants ("RRS") as a bookkeeper with a monthly salary of $3,872.72. This job was used in qualification for the loan. Haskell provided Flagstar with a Processor's Certification of Employment that verified Moses' was employed at RRS.

54. However, Moses' employment is unverifiable because National Tax Verification confirmed that for 1999, Moses' yearly income was only $15,318, not the nearly $48,000 represented by Haskell Mortgage in the loan application. Thus, upon information and belief Haskell Mortgage falsified the Certification of Employment, W-2 Forms and wage statements for Moses' employment at RRS.

## GADSDEN LOAN TRANSACTION
### Haskell Mortgage, Haskell Feldman and Lewis Feldman,

55. On March 6, 2000, Haskell Mortgage made one residential mortgage loan to borrower, Daren K. Gadsden ("Gadsden"). Lewis Feldman served as the loan officer for the loan and assisted in completion of the loan application via a face-to-face interview with Gadsden. Flagstar purchased the loan from Haskell Mortgage.

56. The loan made to Gadsden was in the amount of $44,000.00 (Loan No. 998045250) to purchase property located at 532 N. Payson Street, Baltimore, Maryland 21223 ("Payson Street"). The loan application indicates Gadsden had a monthly salary of $2,253.33 and a bank account balance of $26,021.00 with Navy Federal Credit Union.

57. Haskell Mortgage misrepresented Gadsden's employment by providing false wage statements to Flagstar. The loan application for Payson Street indicates that Gadsden was employed as an administrative assistant by Magnolia Coach, LLC. This job was used in qualification for the loan. Haskell Mortgage provided Flagstar with a wage statement for pay period ending December 25, 1999 stating a year-to-date salary of $23,400.00.

58. The income that Gadsden reported to the Internal Revenue Service for 1999 was $14,168.00, not $23,400.00 as represented to Flagstar by Haskell Mortgage.

59. Haskell Mortgage also failed to indicate that Gadsden was self-employed with a company known as "Knowledge Is Power, Inc."  Moreover, according to Mr. Gadsden, he was not involved with this loan or present at settlement because his identity was stolen.

60. Haskell Mortgage submitted to Flagstar a mortgage loan package which included false or inaccurate information regarding Gadsden's purported cash at settlement, where upon information and belief, such cash paid at settlement was in excess of what Gadsden's income and assets revealed he could pay.  The HUD-1 settlement statement required a cash at settlement payment of $17,211.93 and his bank account statement indicated a beginning balance of $6,661.56 on February 28, 2000 and an ending balance of $6,552.01 on March 27, 2000.

61. The loan file included a HUD-1 settlement statement signed by Gadsden and prepared by Dabbondonza on behalf of All County Title, which indicated that Gadsden paid cash at settlement that, upon information and belief, he did not pay.

62. Upon information and belief, Haskell Mortgage contacted Best Appraisals to appraise the Payson Street property.

63. The Payson Street property was appraised by Best Appraisals for $55,000.00. Based on the appraisal provided by Best Appraisals, the loan to value ratio was 80%. The loan was purchased by Flagstar in reliance upon the appraisal and the borrower's ability to pay the required cash at settlement payment.

64. After Flagstar purchased the loan and became aware of irregularities associated with the Haskell Mortgage loans, Flagstar had another appraisal prepared by a different appraiser, which valued the property in the amount of $5,000.00, representing a more accurate loan to value ratio of 880%.

65. Upon information and belief, Lewis Feldman contacted Darnell Acree of Camden Realty to arrange the "flip" transaction. Indeed, a prior transaction involving Payson Street occurred on the same day as the Gadsden transaction, thus preventing discovery of the flip. For the first transaction, according to SDAT records, Camden Realty, LLC sold the property to Gadsden for $13,000.00. For the second transaction, Darnell Acree, who is affiliated with Camden Realty, sold the property again to Gadsden on the same day for $55,000.00. The prior sale and the Gadsden sale were recorded on the same day as arms length transactions allegedly representing the fair market value of the property.

## COLE LOAN TRANSACTION
### Haskell Mortgage, Haskell Feldman and Lewis Feldman

66. On August 18, 2000, Haskell Mortgage made one residential mortgage loan to borrower Mary A. Cole ("Cole"). The loan made to Cole was in the amount of $50,450.00 (Loan No. 998130223) to purchase property located at 200 W. 27th Street, Baltimore, Maryland 21211 ("27th Street"), Flagstar purchased the loan from Haskell Mortgage.

67. Scott Smith, an employee of Haskell Mortgage, was the loan officer and completed the loan application via a face-to-face interview. According to Cole, the face-to-face

interview never occurred.  Upon information and belief, Scott Smith does not exist and was a name used by Lewis Feldman.  The loan application indicates that Cole had a total monthly salary of $3,393.13 and bank account balances totaling $34,418.00 and an ESOP in the amount of $5,867.00 from Cintas Corporation.  Lewis Feldman executed the note in the amount of $50,450.00.

68. Haskell Mortgage misrepresented to Flagstar Cole's employment.  The loan application indicated that Cole was employed for the last sixteen years at RRS Services & Consultants ("RRS") as a secretary with a monthly salary of $1,733.00.  This job was used in qualification for the loan.  Haskell provided Flagstar with W-2 forms and Wage Statements from RRS for Cole.  Cole, however, never worked for RRS.  Thus, Haskell Mortgage falsified the W-2 forms and wage statements for Cole's employment at RRS.

69. Haskell Mortgage submitted to Flagstar a mortgage loan package which included false or inaccurate information regarding Cole's purported cash at settlement, where such payment was in excess of what Cole's income and assets revealed she could pay.  The HUD-1 settlement statement required cash at settlement from Cole of over $20,000.00 and the loan application indicated bank account balances totaling over $34,000.00.  Cole, however, has never had bank account balances totaling over $34,000.00.  Cole's bank account statements indicate that she only has a balance of $5,725.72 in August 2000.  Cole has never had $18,000.00 with Chevy Chase Bank or $16,382.00 with SunTrust as indicated by Haskell Mortgage  on the loan application.  Cole never brought any funds to settlement and Cole was supposed to receive $5,000.00 from Haskell Mortgage.  Furthermore, the settlement statement indicates that the closing took place in Mt. Airy, Maryland.  Cole, however, has never been to Mt. Airy, Maryland.

70. Upon information and belief, Lewis Feldman contacted Stevenson and B&S Enterprises Appraisal Service ("B&S") to appraise the 27th Street property.

71. The 27th Street property was appraised by Stevenson and B&S Appraisal for $63,100.00, the same amount of the contract price. Based on the appraisal provided by Stevenson, the loan to value ratio was 80%. The loan was purchased by Flagstar in reliance upon the appraisal and the borrower's ability to make the required cash at settlement payment.

72. After Flagstar purchased the loan and became aware of irregularities associated with the Haskell Mortgage loans, Flagstar had a second appraisal prepared by a different appraiser which appraised the property in the amount of $25,000.00, representing a more accurate loan to value ratio of 201%.

73. Upon information and belief, Lewis Feldman contacted DRF, LLC to arrange the "flip" transaction. Upon information and belief, Lewis Feldman was an officer of DRF, LLC and DRF had the same address as Haskell Mortgage. Indeed, a prior transaction involving 27th Street occurred on the same day as the Cole transaction, thus preventing discovery of the flip. For the first transaction, DRF, LLC paid $14,000.00 to George Chenoweth for the property. In turn, DRF, LLC sold the property to Cole on the same day for $63,100.00. Upon information and belief, the prior sale and the Cole sale were recorded on the same day as arms length transactions allegedly representing the fair market value of the property.

## FRUTCHEY AND PENN LOAN TRANSACTION
**Haskell Mortgage, Haskell Feldman and Lewis Feldman**

74. On January 7, 2000, Haskell Mortgage made one residential mortgage loan to borrowers Debra Frutchey and David Penn ("Frutchey and Penn"). The loan made to Frutchey and Penn was in the amount of $53,100.00 (Loan No. 998041235) to purchase property located at 2674 Loyola Southway, Baltimore, Maryland 21215 ("Loyola Southway"). Flagstar purchased the loan from Haskell Mortgage.

75. Lewis Feldman served as the loan officer for the loan and assisted in completion of the loan application via a telephone interview with Frutchey and Penn. Penn also spoke with Haskell Feldman in connection with the loan and dropped paperwork at Haskell Mortgage's office. The loan application indicates that Frutchey, an assistant manager, had a monthly salary of $3,208.00 from Enterprise Leasing and that Penn, an office manager, had a monthly salary of $2,325.00 from Stoneview Square Apartments. The loan application stated a bank account balances totaling $14,000.00.

76. Frutchey and Penn were told that the information on the loan application was merely for verification purposes and that Frutchey and Penn would not have to apply funds from their bank accounts toward the purchase of the property.

77. Haskell Mortgage submitted to Flagstar a mortgage loan package which included false or inaccurate information regarding Frutchey and Penn's purported cash at settlement payment at closing. The HUD-1 settlement statement required a cash at settlement payment from Frutchey and Penn of over $12,000.00. Frutchey and Penn never brought any funds to settlement and Frutchey and Penn were supposed to receive $1,500.00 from Haskell Mortgage after settlement.

78. The loan file included a HUD-1 settlement statement signed by Frutchey and Penn and was prepared by Chase Title, which indicated that Frutchey and Penn made a cash at settlement payment at closing that they did not make. A payment was also made to SCI, Lewis Feldman's company.

79. Upon information and belief, Haskell Mortgage contacted Best Appraisals to appraise the Loyola Southway property.

80. The Loyola Southway property was appraised by Best Appraisals for $59,000, the same amount as the contract price. Moreover, the appraisal lists the current based on the appraisal provided by Best Appraisals, the loan to value ratio was 90%. The loan was purchased by Flagstar in reliance upon the appraisal and the borrowers' ability to make the required cash at settlement payment.

81. After Flagstar purchased the loan and became aware of irregularities associated with the Haskell Mortgage loans, Flagstar had a second appraisal prepared by a different appraiser which appraised the property in the amount of $5,000.00, representing a more accurate loan to value ratio of 106%.

82. Upon information and belief, Lewis Feldman contacted Darnell Acree of Smallwood Investments to arrange the "flip" transaction. Indeed, a prior transaction involving Loyola Southway occurred on the same day as the Frutchey/Penn transaction, thus preventing discovery of the flip. For the first transaction, Smallwood Investments paid $20,000 to NBS, Inc. for the property. In turn Smallwood Investments sold the property to Frutchey and Penn on the same day for $59,000.00. The HUD-1 settlement statement for the Frutchey Penn transaction indicates a payoff in the amount of $19,674.74 of the NBS, Inc., Mortgage.

## COUNT I
### (Breach of Contract – Haskell Mortgage)

83. Flagstar incorporates herein by reference the allegations of Paragraphs 1 through 82 of the Complaint as though fully set forth herein.

84. Flagstar and Haskell Mortgage entered into the Purchase Agreement, pursuant to which Flagstar purchased mortgage loans originated by Haskell Mortgage.  Each mortgage loan purchase made by Flagstar was subject to Haskell Mortgage's agreements concerning its business practices and fulfillment of certain conditions precedent, including, but not limited to, representations and warranties made by Haskell Mortgage in the Purchase Agreement are true and correct and that Haskell Mortgage is not in default of any such representations and warranties or any other agreements and obligations it has undertaken in the Purchase Agreement.

85. Haskell Mortgage breached its representations, warranties, and other obligations under the Purchase Agreement by submitting to Flagstar appraisals stating falsely inflated values to induce Flagstar to purchase mortgage loans in amounts generally representing over 100% of the fair market value of the mortgage property.

86. Haskell Mortgage also breached its representations, warranties, and other obligations under the Purchase Agreement by submitting to Flagstar false employment, income and asset information as to the various borrowers in order to induce Flagstar to purchase the mortgage loans at issue from Haskell Mortgage.

87. Pursuant to Paragraph 2N of the Purchase Agreement, Haskell Mortgage is obligated to repurchase each mortgage loan purchased by Flagstar after notice of breach. Despite Flagstar's notice, Haskell Mortgage has refused to repurchase the mortgage loans affected by the breach after Flagstar notified Haskell Mortgage of its breach together with all costs, expenses, premiums and attorneys' fees.

88. As a direct and proximate result of Haskell Mortgage's breaches of its representations, warranties and obligations under the Purchase Agreement, Flagstar has incurred and continues to incur substantial damage.

WHEREFORE, Flagstar demands judgment against Haskell Mortgage for:

A. An Order to enforce Haskell Mortgage's repurchase obligations under the Purchase Agreement;

B. Compensatory damages in the amount of $500,000, plus all accrued interest to the date of repurchase;

C. Pre and post-judgment interest, costs and reasonable attorneys' fees; and

D. Such other and further relief as the Court deems just and proper.

### COUNT II
### (Fraud with respect to the Loan Applications –
### Haskell Mortgage, Haskell Feldman and Lewis Feldman)

89. Flagstar incorporates herein by reference the allegations of Paragraphs 1 through 88 of the Complaint as though fully set forth herein.

90. Defendants Haskell Mortgage, Haskell Feldman and Lewis Feldman falsely and fraudulently, and with intent to defraud Flagstar, represented that borrowers made the down payments set forth in the HUD-1 Settlement Statements and had the employment, income and assets set forth in their loan applications. The aforementioned parties knew the representations were false, or the representations were made with reckless disregard for their accuracy such that knowledge can be imputed to them.

91. Flagstar relied upon the representations set forth in the HUD-1 Settlement Statements submitted by Haskell Mortgage, and was thereby induced to purchase the mortgage loans from Haskell Mortgage.

92. The aforementioned Defendants made these misrepresentations with actual malice.

93. As a result, Flagstar paid an amount to purchase the mortgage loans generally in excess of l00% of the fair market value of the property and now the loans are delinquent or in default.

WHEREFORE, Flagstar demands judgment against Haskell Mortgage, Haskell Feldman and Lewis Feldman for:

A.     An order to enforce Haskell Mortgage's repurchase obligations under the Purchase Agreement

B.     Compensatory damages in the amount of $500,000, plus all accrued interest to the date of repurchase;

C.     Punitive damages in the amount of $1,500,000.

D.     Pre and post-judgment interest, costs and reasonable attorneys' fees; and

E.     Such other further relief as the Court deems just and proper.

## COUNT III
### (Negligent Misrepresentation with respect to the Loan Applications – Haskell Mortgage, Haskell Feldman and Lewis Feldman)

94. Flagstar incorporates herein by reference the allegations of Paragraphs 1 through 93 of the Complaint.

95. Defendants Haskell Mortgage, Haskell Feldman and Lewis Feldman owed a duty of care to Flagstar to provide loan packages that were accurate, complete, and not misleading.

96. Haskell Mortgage was negligent and failed to exercise reasonable care in submitting to Flagstar loan packages that contained false, inaccurate or misleading information

regarding the borrowers' purported employment and down payments in light of the borrowers' state income and assets.

97. Haskell Mortgage, Haskell Feldman and Lewis Feldman knew that Flagstar would rely on the statements set forth in the loan packages with regard to the borrowers' employment, down payment, income and assets, which if erroneous would cause Flagstar loss and injury.

98. In preparing and submitting the loan packages, Haskell Feldman and Lewis Feldman intended that Flagstar would rely upon the statements set forth therein in determining whether to purchase the loans from Haskell Mortgage.

99. Flagstar justifiably relied upon the statements set forth in the loan packages regarding the borrowers' employment, down payment, income and assets.

100.    As a direct and proximate result of Haskell Mortgage's, Haskell Feldman's and Lewis Feldman's negligent misrepresentations, Flagstar has incurred and continues to incur substantial damages.

WHEREFORE, Flagstar demands judgment against Haskell Mortgage, Haskell Feldman and Lewis Feldman for:

A.    An order to enforce Haskell Mortgage's repurchase obligations under the Purchase Agreement;

B.    Compensatory damages in the amount of $500,000, plus all accrued interest to the date of repurchase;

C.    Pre and post-judgment interest, costs and reasonable attorneys' fees; and

D.    Such other further relief as the Court deems just and proper.

**COUNT IV**
**(Fraud with Respect to the Appraisals --**
**All Defendants)**

101.    Flagstar incorporates herein by reference the allegations of Paragraphs 1 through 100 of the Complaint as though fully set forth herein.

102.    Defendants Haskell Mortgage, Haskell Feldman and Lewis Feldman falsely and fraudulently and with intent to defraud Flagstar represented to Flagstar that:

A.    The property sold to Dove located at 719 S. Conkling Street, Baltimore, Maryland 21224, appraised for $98,500, when in fact the value of the property was $58,000;

B.    The property sold to Dove located at 3905 Fait Avenue, Baltimore, Maryland, 21224, appraised for $103,800 when in fact the value of the property was $45,000;

C.    The property sold to Grant located at 2020 Eagle Street, Baltimore, Maryland 21223, appraised for $46,000, when in fact the value of the property was $20,000;

D.    The property sold to Cole located at 200 W. 27th Street, Baltimore, Maryland 21211, appraised for $63,100, when in fact the value of the property was $25,000.

E.    The property sold to Gadsden located at 532 N. Payson Street, Baltimore, Maryland 21223, appraised for $55,000, when in fact the value of the property was $5,000.

F.    The property sold to Frutchey Penn located at 2674 Loyola Southway, Baltimore, Maryland  21215, appraised for $59,000, when in fact the value of the property was $5,000.

103.    Defendants Sovereign Title, Elizabeth Brooks and Aura Colon falsely and fraudulently and with intent to defraud Flagstar represented to Flagstar that:

A.    The property sold to Dove located at 719 S. Conkling Street, Baltimore, Maryland 21224, appraised for $98,500, when in fact the value of the property was $58,000; and

B.    The property sold to Dove located at 3905 Fait Avenue, Baltimore, Maryland, 21224, appraised for $103,800 when in fact the value of the property was $45,000.

104.    Flagstar relied upon the representations set forth in the appraisals submitted by Defendants and was thereby induced to purchase the mortgage loans for the properties referred to above.

105.    As a result, Flagstar paid substantial sums to purchase the mortgage loans in amounts up to nearly 240% of the fair market value of the properties and now the loans are delinquent or in default and Flagstar has incurred and continues to incur substantial damages as a result.

WHEREFORE, Flagstar demands judgment against the Defendants for:

A.    An order to enforce Haskell Mortgage's repurchase obligations under the Purchase Agreement;

B.    Compensatory damages in the amount of $500,000, plus all accrued interest to the date of repurchase.

C.    Punitive damages in the amount of $1,500,000.

D.    Pre and post-judgment interest, costs and reasonable attorneys' fees; and

E.    Such other further relief as the Court deems just and proper.

**COUNT V**
**(Negligent Misrepresentation with Respect to the Appraisals --**
**All Defendants)**

106.    Flagstar incorporates herein by reference the allegations of Paragraphs 1 through 105 of the Complaint.

107.    Defendants owed a duty of care to Flagstar to submit to Flagstar an appraisal that was accurate and in accordance with Maryland law and industry standards for the mortgage property for each of the mortgage loans Flagstar purchased from Haskell Mortgage.

108.    Defendants were negligent and failed to exercise reasonable care by submitting appraisals to Flagstar with inflated values for the mortgage loan properties.

109.    Defendants knew that Flagstar would rely on the appraisals which if erroneous would cause Flagstar loss and injury.

110.    Defendants intended that Flagstar rely upon the appraisals in making its decision to purchase the mortgage loans from Haskell Mortgage.

111.    Defendants Haskell Mortgage, Haskell Feldman and Lewis Feldman falsely and fraudulently and with intent to defraud Flagstar represented to Flagstar that:

A.    The property sold to Dove located at 719 S. Conkling Street, Baltimore, Maryland 21224, appraised for $98,500, when in fact the value of the property was $58,000;

B.    The property sold to Dove located at 3905 Fait Avenue, Baltimore, Maryland, 21224, appraised for $103,800 when in fact the value of the property was $45,000;

C.    The property sold to Grant located at 2020 Eagle Street, Baltimore, Maryland 21223, appraised for $46,000, when in fact the value of the property was $20,000;

D.    The property sold to Cole located at 200 W. 27th Street, Baltimore, Maryland 21211, appraised for $63,100, when in fact the value of the property was $25,000.

E.    The property sold to Gadsden located at 532 N. Payson Street, Baltimore, Maryland 21223, appraised for $55,000, when in fact the value of the property was $5,000.

F.    The property sold to Frutchey Penn located at 2674 Loyola Southway, Baltimore, Maryland 21215, appraised for $59,000, when in fact the value of the property was $5,000.

Defendants Haskell Mortgage, Haskell Feldman and Lewis Feldman falsely and fraudulently and with intent to defraud Flagstar represented to Flagstar that:

A.    The property sold to Dove located at 719 S. Conkling Street, Baltimore, Maryland 21224, appraised for $98,500, when in fact the value of the property was $58,000; and

B.     The property sold to Dove located at 3905 Fait Avenue, Baltimore, Maryland, 21224, appraised for $103,800 when in fact the value of the property was $45,000.

112.     Flagstar justifiably relied upon the appraisals in purchasing the mortgage loans from Haskell Mortgage.

113.     As a direct and proximate cause of Flagstar's reliance upon Defendant's submission of the falsely inflated appraisals, Flagstar purchased the mortgage loans in amounts representing over 100% of fair market value of the mortgaged properties when it had only agreed to purchase the mortgage loans in an amount representing between 60% and 90% of the fair market value of the mortgage property, and now the loans are delinquent or in default and Flagstar has incurred and continues to incur substantial damages as a result.

WHEREFORE, Flagstar demands judgment against the Defendants for:

A.     An Order to enforce Haskell Mortgage's repurchase obligations under the Purchase Agreement;

B.     Compensatory damages in the amount of $500,000, plus all accrued interest to the date of repurchase;

C.     Pre and post-judgment interest, costs and reasonable attorneys' fees; and

D.     Such other and further relief as the Court deems just and proper.

### <u>COUNT VI</u>
**(Fraud with Respect to the Settlements -All Defendants)**

114.     Flagstar incorporates herein by reference the allegations of Paragraph 1 through 113 of the Amended Complaint.

115.     The Defendants falsely and fraudulently and with intent to defraud Flagstar represented to Flagstar that each borrower made the cash at settlement payments set forth in the HUD-1 settlement statements and had the income and assets set forth in their loan

applications.

116.    Flagstar relied upon the representations set forth in the settlement statements submitted by Defendant's and was thereby induced to purchase the mortgage loans from Haskell Mortgage.

117.    The aforementioned Defendants made these representations with actual malice.

118.    As a result, Flagstar paid an amount to purchase the mortgage loans generally in excess of 100% of the fair market value of the property, and now many of the loans are delinquent or in default.

WHEREFORE, Flagstar demands judgment against Defendants for:

A.    An Order to enforce Haskell Mortgage's repurchase obligations under the Purchase Agreement;

B.    Compensatory damages in the amount of $500,000, plus all accrued interest to the date of repurchase;

C.    Punitive damages in the amount of $1,500,000;

D.    Pre and post-judgment interest and costs; and

E.    Such other and further relief as the Court deems just and proper.

## COUNT VII
**(Negligent Misrepresentation with Respect to the Settlements-All Defendants)**

119.    Flagstar incorporates herein by reference the allegations of Paragraphs 1 through 118 of the Amended Complaint.

120.    The Defendants owed a duty of care to Flagstar to provide mortgage loan packages that were accurate, complete and not misleading.

121.    Defendants were negligent and failed to exercise reasonable care in submitting to Flagstar loan packages that, upon information and belief, contained false,

PLD0871-L658-01
6/5/2003

inaccurate or misleading information regarding the borrowers' purported cash at settlement payment in light of the borrowers' stated income and assets.

122.    In preparing and submitting the mortgage loan packages, Defendants intended that Flagstar would rely upon the statements set forth therein in determining whether to purchase the mortgage loans from Haskell Mortgage.

123.    Defendants knew that Flagstar would rely on the statements set forth in the mortgage loan packages with regard to the borrowers' purported cash at settlement payment, income and assets, which if erroneous would cause Flagstar loss and injury.

124.    Flagstar justifiably relied upon the statements set forth in the mortgage loan packages regarding the borrowers' cash at settlement payment, income and assets.

125.    As a direct and proximate result of Defendants' negligent misrepresentations, Flagstar has incurred and continues to incur substantial damages as a result.

WHEREFORE, Flagstar demands judgment against the Defendants for:

A.    An Order to enforce Haskell Mortgage's repurchase obligations under the Purchase Agreement;

B.    Compensatory damages in the amount of $500,000, plus all accrued interest to the date of repurchase;

C.    Pre and post-judgment interest and costs; and

D.    Such other and further relief as the Court deems just and proper.

## COUNT VIII
## Civil Racketeer Influenced and Corrupt Organizations Act
### (All Defendants)

126.    Flagstar incorporates herein by reference the allegations of paragraphs 1 through 125 of the Complaint as though fully set forth herein.

127.    During the entire period since late 1999 through 2000, Defendants engaged in a continuing scheme to defraud Flagstar.  Defendants schemed to induce Flagstar to purchase mortgage loans from Haskell Mortgage based upon falsely inflated appraisals, and by false loan applications and HUD-1 settlement statements reflecting, *inter alia*, cash at settlement payments which, upon information and belief, were not paid by borrowers.

128.    Throughout the relevant time period, Defendants committed many acts of bank fraud, indictable under 18 U.S.C. §1344; mail fraud, indictable under 18 U.S.C. § 1341; and wire fraud indictable under 18 U.S.C. § 1343, each of which constituted "racketeering activity" within the meaning of 18 U.S.C. § 1961 (1), and all of which collectively constituted part of a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961 (5).

129.    Defendants mailed and delivered the false and inflated appraisals, false loan applications and HUD-1 settlement statements to Flagstar through the United States Postal Service, other private or commercial interstate carriers and/or by facsimile over the telephone wires, and represented in these documents the true equity of the properties and induced Flagstar to purchase mortgage loans at greatly inflated prices and to loan money to borrowers in excess of the loan-to-value ratios of the properties.

130.    Upon receipt of these documents from Defendants, Flagstar would typically agree to purchase the mortgage loans at issue for between 60% and 90% of the contract price, based upon the loan applications, HUD-1 settlement statements and appraisals submitted

by Defendants and based upon the loan applications submitted by Defendants representing that the balance of the purchase price for the mortgaged property had been or would be paid by the borrowers.

131.    By agreeing to purchase the mortgage loans for between 60% and 90% of the inflated appraised value of the property, Flagstar was generally paying more than 100% of the fair-market value of the properties.  Moreover, Flagstar purchased the mortgage loans from Haskell Mortgage that were made to borrowers of whom have subsequently defaulted, or are delinquent in their payments of the mortgage loans.

132.    Defendants committed the following acts of bank fraud, indictable under 18 U.S.C. §1344; mail fraud, indictable under 18 U.S.C. §1341; and wire fraud, indictable under 18 U.S.C. §1343, each of which constituted "racketeering activity" within the meaning of 18 U.S.C. §1961(1), and all of which collectively constituted part of a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5):

A.    During May 2000, Defendants submitted through the mails and by facsimile a loan package to Flagstar to induce Flagstar to purchase a mortgage loan made by Haskell Mortgage to Keith Dove.  The loan package consisted of, among other documents, a falsely inflated appraisal for the mortgaged property, and a loan application and HUD-1 settlement statement which, upon information and belief falsely reflected the borrower's income and assets and the borrower's cash at settlement payment.  Based upon the loan package received by Flagstar, it did purchase the mortgage in an amount over 100% of the fair-market value of the property.

B.    During May 2000, Defendants submitted through the mails and by facsimile a loan package to Flagstar to induce Flagstar to purchase a mortgage loan made by

Haskell Mortgage to Keith Dove.  The loan package consisted of, among other documents, a falsely inflated appraisal for the mortgaged property, and a loan application and HUD-1 settlement statement which, upon information and belief falsely reflected the borrower's income and assets and the borrower's cash at settlement payment.  Based upon the loan package received by Flagstar, it did purchase the mortgage in an amount over 100% of the fair-market value of the property.

       133.    Continuously during the relevant time period, Defendants have engaged in a scheme to defraud Flagstar which constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961 (5), including numerous acts indictable under 18 U.S.C. § 1344, 18 U.S.C. § 1341 and 18 U.S.C. § 1443.  Defendants devised and engaged in a series of schemes and artifices to defraud, and for the purpose of executing such schemes and artifices to defraud, Defendants caused documents to be mailed and delivered by the United States Postal Service.  In addition, for the purpose of executing such schemes and artifices to defraud, Defendants caused writings to be transmitted by means of wire communications in interstate commerce.  Defendants, individually and collectively, constitute an "enterprise" within the meaning of 18 U.S.C. § 1961 (4).  Defendants received income directly from the pattern of racketeering activity and used the income of its proceeds to operate themselves in violation of 18 U.S.C. § 1961 (3).  The enterprise and the pattern of racketeering activity directly affected interstate commerce.  Defendants conspired with and amongst themselves and others to violate the provisions of 18 U.S.C. § 1962(c) and 1962(d).

       WHEREFORE, Flagstar demands judgment against the Defendants for:

A.      An Order to enforce Haskell Mortgages repurchase obligations under the Purchase Agreement;

B.      Compensatory damages in the amount of $500,000 plus any accrued

interest to the date of repurchase;

C.    Treble damages, reasonable attorneys' fees, expenses and costs pursuant
to      18 U.S.C. § 1964(c); and

D.    Pre and post-judgment interest; and

E.    Such other and further relief as the Court deems just and proper.


_____/s/_____
Donald A. Rea (Federal Bar No.  23194)
Alison E. Goldenberg (Federal Bar No. 024778)

Gordon, Feinblatt, Rothman,
     Hoffberger & Hollander, LLC
The Garrett Building
233 East Redwood Street
Baltimore, Maryland  21202
(410) 576-4000

Attorneys for Plaintiff Flagstar Bank, FSB